WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Brandy Rose Forsman,        )    No. 05-CV-3514-PHX-FJM

         Plaintiff,        )    **ORDER**

vs.                               )

Chicago Title Insurance Company,    )

         Defendant.       )

_____ )

       The court has before it defendant's motion to dismiss plaintiff's complaint (doc. 4) and plaintiff's response (doc. 7). Concurrent with her response, plaintiff filed her first amended complaint (doc. 6). The court also has before it defendant's motion to dismiss plaintiff's first amended complaint and motion to strike (doc. 10), plaintiff's response (doc. 11), and defendant's reply (doc. 12). As the original complaint is no longer effective, we deny as moot defendant's motion to dismiss plaintiff's complaint (doc. 4).

I

       Plaintiff Forsman alleges that she was employed by defendant Chicago Title Insurance Company ("Chicago Title"); that on at least three separate occasions, she was physically and verbally sexually harassed by Ted Michaud, a significant client at Chicago Title; that she reported the events to her supervisor but the supervisor did not take action; that a co-worker Kathy Hickman retaliated against Forsman after learning of the reports; that Forsman asked

1  her supervisor to speak with Hickman about the retaliation; and that Forsman was discharged
2  that day. First Amended Complaint at 2-3. Forsman further alleges that approximately two
3  weeks later, Chicago Title offered to re-employ her at a different Chicago Title location; that
4  she accepted; but that the working environment was so intolerable that she was forced to
5  leave. Id. at 3, 5. Accordingly, Forsman claims that Chicago Title is liable for wrongful
6  termination pursuant to the Employment Protection Act ("EPA"), A.R.S. § 23-1501(3)(b).
7  Id. at 5-6. Forsman also claims that Chicago Title is liable for the intentional infliction of
8  emotional distress. Id. at 6-7.

9                                          II

10        The EPA was intended to limit the common law avenues of relief for claims for
11  wrongful discharge. Cronin v. Sheldon, 195 Ariz. 531, 535, 991 P.2d 231, 235 (1999).
12  Accordingly, A.R.S. § 23-1501(3)(b) states that "[a]n employee has a claim against an
13  employer for termination of employment" if the "employer has terminated the employment
14  relationship of an employee in violation of a statute of this state," such as the Arizona Civil
15  Rights Act ("ACRA"). To the extent that the EPA permits a plaintiff to raise a common law
16  tort claim based upon the public policy arising out of the ACRA, that claim is limited by all
17  the restrictions contained in the ACRA.   A.R.S. § 23-1501(3)(b).   The EPA therefore
18  prevents a plaintiff from evading the explicit restrictions of the ACRA–which include the
19  requirement to produce a right-to-sue notice, A.R.S. § 41-1481(D)–by raising a common law
20  tort claim for wrongful discharge based upon the public policies arising out of the ACRA.
21  Cronin, 195 Ariz. at 531, 991 P.2d at 235.

22        Forsman seeks to raise a claim under the ACRA, or Title VII of the Civil Rights Act
23  of 1964, but she has not yet received the requisite right-to-sue notice from the Equal
24  Employment Opportunity Commission ("EEOC").   Response to Motion to Dismiss
25  Complaint at 3-4. Accordingly, Forsman is currently barred from raising either an ACRA
26  or Title VII claim. Concerned that she would be permanently barred by the expiration of the
27  one-year statute of limitations of the ACRA, A.R.S. § 41-1481(D), Forsman filed suit
28

1    claiming a violation of the EPA, A.R.S. § 23-1501(3)(b), with her underlying substantive

2    claim based upon a violation of the ACRA. <u>Response to Motion to Dismiss Complaint</u> at 3-

3    4. However, because Forsman is currently barred from raising an ACRA claim, she is

4    similarly barred from raising this EPA claim. Accordingly, we grant Chicago Title's motion

5    to dismiss plaintiff's EPA claim (doc. 10).

6         Forsman alerts us that she filed a charge with the EEOC on October 19, 2004; that the

7    EEOC is currently investigating the charge; and that she intends to amend her complaint to

8    include a federal employment discrimination claim and/or ACRA claim upon receipt of the

9    right-to-sue notice from the EEOC. <u>Response to Motion to Dismiss Complaint</u> at 3-4;

10   <u>Response to Motion to Dismiss Amended Complaint</u> at 5. Over 180 days have passed since

11   Forsman filed her charge with the EEOC, and accordingly, she may request a right-to-sue

12   notice from the EEOC. 29 C.F.R. § 1601.28(a)(1); 3 Lex. K. Larson, <u>Labor and Employment</u>

13   <u>Law</u> § 83.02 (2005). Upon receipt of the right-to-sue notice, Forsman may, on a timely basis,

14   amend the first amended complaint pursuant to Rule 15(a), Fed. R. Civ. P, to include the

15   additional claims.

16                                  **III**

17                                  **A**

18         Forsman claims that Chicago Title is liable for the intentional infliction of emotional

19   distress. "One who by extreme and outrageous conduct intentionally or recklessly causes

20   severe emotional distress to another is subject to liability for such emotional distress."

21   <u>Restatement (Second) of Torts</u> § 46 (1965); <u>accord</u> <u>Ford v. Revlon</u>, 153 Ariz. 38, 43, 734

22   P.2d 580, 585 (1987). Chicago Title moves to dismiss Forsman's claim, arguing that the

23   allegations are insufficient as a matter of law to justify a finding that its conduct was extreme

24   and outrageous. <u>Motion to Dismiss the First Amended Complaint</u> at 4-8. We disagree.

25         A defendant may be liable for the intentional infliction of emotional distress:

26          only where the conduct has been so outrageous in character, and so extreme
           in degree, as to go beyond all possible bounds of decency, and to be regarded

27          as atrocious, and utterly intolerable in a civilized community. Generally, the
           case is one in which the recitation of the facts to an average member of the

28

community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 cmt. d.  A claim for the intentional infliction of emotional distress is sufficient as a matter of law if the court determines that "reasonable [people] may differ" as to whether the conduct was sufficiently outrageous.  Lucchesi v. Stimmell, 149 Ariz. 76, 79, 716 P.2d 1013, 1016 (1986) (quoting Restatement (Second) of Torts § 46 cmt. h).

For instance, in 1987, the Supreme Court of Arizona concluded that an employer could be found liable for the intentional infliction of emotional distress where an employee informed her employer many times that her supervisor was verbally and physically sexually assaulting her, and the employer disregarded the employee's concerns for months.  Ford, 153 Ariz. at 43, 734 P.2d at 585.  In contrast, in 1995, the Court of Appeals of Arizona concluded that an employer could not be liable for the intentional infliction of emotional distress, even if it failed to promote a female employee due to sex discrimination, or retaliation for the employee's previous allegation of sex discrimination.  Mintz v. Bell Atlantic Systems Leasing Int'l, Inc., 183 Ariz. 550, 554, 905 P.2d 559, 563 (Ct. App. 1995).

Mintz relies in part on Cox v. Keystone Carbon Co., 861 F.2d 390 (3d Cir. 1988) cert. denied, 498 U.S. 811, 111 S. Ct. 47 (1990), which states that under Pennsylvania law "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."  Mintz, 183 Ariz. at 554, 905 P.2d at 563; Cox, 861 F.2d at 395.  Cox continues, stating that "the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee."  Cox, 861 F.2d at 395.

Forsman alleges that her supervisor failed to act to prevent ongoing verbal and physical sexual harassment after the supervisor was informed; that her co-worker retaliated against her after she complained of the harassment; that she complained to her supervisor

- 4 -

1   about the retaliation; that she was thereafter discharged; and that she was subsequently
2   rehired but was constructively discharged due to intolerable treatment.  Forsman does not
3   allege that she was harassed after reporting the harassment to her supervisor, but since she
4   alleges that the supervisor failed to take any action to stop the harassment, Forsman appears
5   to allege that the harassment ended either due to the discharge, or for some other reason.

6          Assuming that all of these allegations are true, as we must for purposes of the motion
7   to dismiss, we believe that a reasonable member of this community could find Chicago Title's
8   conduct outrageous.[1]  As in Ford, this case involves allegations of physical abuse or assault,
9   factors not present in Mintz.  In any event, a society's sense of outrage evolves with time, and
10  therefore, while a court's presumption regarding the values of a community that existed ten
11  or twenty years ago may be persuasive, it certainly is not dispositive.

12                                          **B**

13         To commit the intentional infliction of emotional distress, the tortfeasor must act
14  either intentionally or recklessly.  Ford, 153 Ariz. at 43, 734 P.2d at 585.  Forsman alleges
15  that Chicago Title acted recklessly.[2]  First Amended Complaint at 6.  A civil action is barred
16  and workers' compensation is the sole available remedy for an injury caused by an employer
17  acting within the scope of his employment, unless the injury is the result of "willful
18  misconduct," which is defined as "an act done knowingly and purposely with the direct object

19

20  [1] Chicago Title argues that it cannot be liable for the conduct of Michaud–the man
    who allegedly harassed Forsman and who is allegedly a significant client of Chicago Title–
21  because he was neither an employee nor agent.  Motion to Dismiss at 5; First Amended
    Complaint at 2-3.  While we agree that Chicago Title is not directly liable for Michaud's
22  conduct under this theory of liability, we also believe that a jury could reasonably conclude
23  that an employer acts outrageously when it takes no action to prevent a significant client from
    verbally and physically sexually harassing its employee.  This is not a case of vicarious
24  liability–this case involves Chicago Title's liability for its own independent conduct.

25  [2] Forsman later argues that the first amended complaint can be interpreted to include
26  the allegation that Chicago Title acted intentionally.  Response to Motion to Dismiss the
    Amended Complaint at 8.  We find Forsman's argument unconvincing given her explicit
27  allegation that Chicago Title's action was reckless.  However, we need not further consider
28  the argument because it is unnecessary to the outcome of this order.

1    of injuring another." A.R.S. § 23-1022(A), (B). In Gamez v. Brush Wellman, Inc., 201 Ariz.

2    266, 34 P.3d 375 (Ct. App. 2001), the Court of Appeals of Arizona concluded that

3    recklessness and gross negligence are insufficient under this test; the act must be committed

4    with the intent to cause injury. Id. at 269-71, 34 P.3d at 378-80. Chicago Title argues that

5    because Forsman does not allege that it acted intentionally and with the direct object of

6    injuring Forsman, Forsman's intentional infliction of emotional distress claim is preempted

7    by the workers' compensation law. Motion to Dismiss the First Amended Complaint at 8-10.

8        However, Gamez appears to conflict with Ford v. Revlon, 153 Ariz. 38, 734 P.2d 580

9    (1987), where the Supreme Court of Arizona concluded that an intentional infliction of

10    emotional distress claim premised on the defendant's recklessness is not preempted by the

11    workers' compensation law. There, Ford claimed that Revlon, Ford's employer, was liable

12    for the intentional infliction of emotional distress because Ford's supervisor sexually harassed

13    her, and Revlon failed to act to stop the harassment after many months of complaints. Id. at

14    43, 734 P.2d at 585. The court concluded that "even if Revlon did not intend to cause

15    emotional distress, Revlon's reckless disregard of [the supervisor's] conduct made it nearly

16    certain that such emotional distress would in fact occur." Id. The court then concluded that

17    because "the jury found [Revlon] liable for the intentional offense[] [of inflicting emotional

18    distress]," the claim was not preempted by the workers' compensation statute. Id. at 44, 734

19    P.2d at 586. Therefore, the court must have concluded that so long as a plaintiff raises a

20    claim for the intentional infliction of emotional distress, the claim will not be preempted by

21    the worker's compensation law, even where liability is premised on reckless conduct.

22

23

24

25

26

27

28

1    _Gamez_ must yield to _Ford_.[3]  Forsman's claim is therefore not preempted by the

2    workers' compensation law.  Accordingly, Chicago Title's motion to dismiss plaintiff's

3    intentional infliction of emotional distress claim is denied (doc. 10).

4                                              IV

5         Chicago Title moves to strike paragraphs 16 through 26 from Forsman's First

6    Amended Complaint, arguing that the allegations that relate to Michaud's sexual harassment

7    are immaterial, impertinent, and scandalous.  Motion to Dismiss at 10.  We disagree.  The

8    paragraphs are material and pertinent to Forsman's claim for the intentional infliction of

9    emotional distress because they describe the harassment which Forsman alleges that she

10   endured, which she conveyed to her supervisor, and which her supervisor failed to take steps

11   to remedy.  Statements may be stricken as scandalous when they "unnecessarily reflect[] on

12   the moral character of an individual or state[] anything in  repulsive language that detracts

13   from the dignity of the court."  2 James Wm. Moore et al., Moore's Federal Practice §

14   12.37[3].  The statements are relevant and while repulsive, are necessary to support a claim

15   of outrage.  Accordingly, Chicago Title's motion to strike is denied (doc. 10).

16                                              V

17        **IT IS ORDERED DENYING** as moot defendant's motion to dismiss plaintiff's

18   complaint (doc. 4).

19        **IT IS FURTHER ORDERED GRANTING** defendant's motion to dismiss plaintiff's

20   claim for a violation of A.R.S. § 23-1501(3)(b) (doc. 10), with leave to amend to assert a

21   claim under the ACRA or Title VII.

22        **IT IS FURTHER ORDERED DENYING** defendant's motion to dismiss plaintiff's

23   claim for intentional infliction of emotional distress (doc. 10).

24   _____

25        [3] Ford bases its analysis on the interpretation of the term "accident" in A.R.S. § 23-
     1021(B), which identifies when an injury is compensable by workers' compensation.  Ford,
26   153 Ariz. at 44, 734 P.2d at 586.  Gamez bases its analysis on the interpretation of the term
     "willful" in A.R.S. § 23-1022(A), which identifies when a wrong committed is preempted
27   by workers' compensation.  Gamez, 201 Ariz. at 269-71, 34 P.3d at 378-80.  At all events,
28   both cases examine when a claim arising from misconduct is actionable.

1    **IT IS FURTHER ORDERED DENYING** defendant's motion to strike (doc. 10).

2    DATED this 20th day of January, 2006.

3

4

5    *Frederick J. Martone*

6    Frederick J. Martone
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -